## MARLIN FIREARMS CO. v. KELLOGG.

(Circuit Court, D. Connecticut. July 7, 1905.)

### No. 1,138.

PATENTS—INFRINGEMENT—BREECH-LOADING GUNS.
   The Hepburn patents, Nos. 400,679 and 434,062, each for a breech-loading gun, construed, and *held* not infringed as to claims 1 and 5 of the former, and 10, 11, 12, and 21 of the latter, and infringed as to claim 27 of the latter.

In Equity. On final hearing.

Robert C. Mitchell, for complainant.
Louis C. Raegener and Milton E. Robinson, for defendant.

PLATT, District Judge. This is a suit in equity, brought on two United States letters patent to Hepburn—one, No. 400,679, dated April 2, 1889, for a magazine gun; the other, No. 434,062, dated August 12, 1890, for a breech-loading gun. Infringement is alleged upon claims 1 and 5 of the first patent, and upon claims 10, 11, 12, 21, and 27 of the latter patent. The defenses are that said claims are not infringed, and, if broadly considered, are anticipated. For convenience, the claims are set forth en masse:

### Patent No. 400,679.

"(1) The combination, in a gun, of the receiver, A, having a solid or unbroken wall at its top, with the longitudinal opening, I, in its side, and the reciprocating breechblock, B, of the proper form transversely to fill the cavity between the walls of the receiver and the opening, I, in its side, substantially as shown and described."

"(5) The flat-spring ejector, f, provided with the projection, i, said projection being provided with a right-angled face at its front and an inclined or beveled face at its rear side, the same being secured in a recess formed in the inner wall of the receiver, substantially as shown and described."

### Patent No. 434,062.

"(10) The combination of the frame, A, containing the breech mechanism, the reciprocating breechblock moving therein on guide or raceways, and the removable side plate, B, having a portion of it forming one of said raceways supporting the breechblock, substantially as described.

"(11) The combination of frame, A, containing the breech mechanism, and provided with shoulders, $s^1$, $s^2$, projecting laterally therefrom, the reciprocating breechblock moving therein on guide or raceways, and the removable side plate, B, having a portion of it opposite the said shoulders when it is attached to the frame forming one of said raceways supporting the breechblock, substantially as described.

"(12) The combination of frame, A, containing the breech mechanism, and provided with shoulders, $s^1$, $s^2$, $s^3$, $s^4$, projecting laterally therefrom, the reciprocating breechblock moving in the frame on guide or raceways, and the removable side plate, B, fitting between and sustained by said projections, and having a portion of it forming one of said raceways, substantially as described."

"(21) The spring-ejector provided with the projection, $i^2$, having a right-angled face at its front end and an inclined or beveled face at its rear, and also provided with the curved nose, $i^3$, projecting in front of shoulder, $i^2$, and adapted to strike the body part of the cartridge-shell as its head is caught against shoulder, $i^2$, and project it sidewise out of the gun, substantially as described."

"(27) In combination with a reciprocating breech-bolt for a gun, the spring-hook extractor, t, set in a longitudinal recess or groove cut in said bolt in position to hold the shank of the extractor against the strain of its elastic-hook end (in the act of engaging the cartridge) by the opposite solid walls of said groove, the said extractor being held against longitudinal movement in said groove by an enlargement arranged to fit in a corresponding recess in the bolt, substantially as described."

We will first examine claim 1 of the earlier patent. It relates to such an arrangement of the breech-bolt in the frame, as that the cartridge-handling mechanism will be protected from the elements, and the user from injury by a bursting shell. One question only arises, what is meant by having a breechblock of such form as "transversely to fill the cavity between the walls of the receiver and the opening, I, in its side"? Is closing the opening the same thing as filling the cavity? If it is, then defendant infringes.

Let us turn to the specifications. It appears that the patentee says he has improved on the gun which he patented on October 11, 1887, No. 371,455. In that case he made the slot or opening on top of the receiver, "as is customary in this class of guns," but now he puts the opening on the side; the breechblock being so formed "as to completely close this opening, I, its outer surface coming flush with the side or face of the receiver, the same as in the former case it was made to come flush with the top of the receiver." Plaintiff argues: That in one respect the gist of the invention was to provide a firearm of the laterally ejecting type, with a reciprocating breechblock, which is so shaped transversely as to itself close the discharge opening in the side wall of the receiver. That a separate side plate, carried by the breechblock, had been used before Hepburn, for a like purpose, but that he knew this and disclaimed it. Such side plate, for divers reasons, is less reliable than a solid block of metal. Hepburn made such a block of proper shape to fill the cavity between the walls, so that when it slid forward it would itself effectively close said opening. It was also held firmly by the angles of the walls, so that it could not rotate, and so become liable to displace the extractor. That the defendant's construction infringes, because the opening is just as effectively closed when the breechblock lies flush with the inner walls of the receiver as it is when said block lies flush with the outer walls. Defendant takes issue on these propositions, and says further: That Mullins' patent, 349,282, dated September 14, 1886, discloses substantially this portion of the inventive thought attributed to the patent in suit. That in the Mullins patent the empty shells are ejected laterally. It has a reciprocating bolt or breechblock, which, when brought forward into operative position for firing, completely closes the opening from which the empty shells are laterally ejected. The bolt or breechblock, when the gun is ready for firing, also abuts at its rear end against a depending shoulder within the chamber of the gun, so that the recoil of the breechblock after firing is taken by that shoulder, which is on the main frame of the gun. That the Burgess patent, No. 251,694, dated January 3, 1882, also shows a side opening, and a bolt or breechblock which moves past and closes it. That the Mullins or Burgess constructions would infringe plaintiff's patent if the latter shall be construed as broadly as is desired, and therefore, being earlier, must anticipate the claim so construed.

Plaintiff's counsel was understood at the hearing to admit that one of these bolts or breechblocks does completely close the side opening when the gun is in operative position for firing; and, this being so, of course, claim 1, construed as it must be, is not infringed.

Claim 5 of the first patent and claim 21 of the second patent may well be considered together, because they relate particularly to the "ejector," which is the means used to expel the empty shells. In claim 5 it is essential to read in a nose forward of the stop shoulder, which latter is the "projection, i." This is asked for because the

specification places the "projection, i," near the front end of the extractor. That is true, but the nose, with the functions claimed for it, cannot be found either in specification or in drawings. It is not perceived that there is any possibility of the part of the extractor forward of "projection, i," bearing against the side of the shell at any stage of the operation.

We must journey along to claim 21 of the second patent to find the nose, and the trouble which the nose provokes. We find here a feature additional to claim 5, just discussed, viz., "and also provided with the curved nose, $i^3$, projecting in front of shoulder, $i^z$, and adapted to strike the body part of the cartridge-shell as its head is caught against the shoulder, $i^z$, and project it sidewise out of the gun." Before we reach this feature, it is well to note that there is no projection in defendant's construction "which has a right-angled face at its front, and an inclined or beveled face at its rear." A spring is used to actuate the pivoted ejector, but springs for that purpose were old. See Berdan, 108,869, and Tiesing, 206,367. The inclined faces of the ejectors in both patents are to enable the breechblock to pass over it in its forward movement, and the right-angled faces are to serve as stops; both functions appearing in the Hepburn patent.

Going back to the nose, we find that the claim says that it is adapted to strike the body part of the cartridge shell as the head is caught against the shoulder. The shoulder is on the free end of a spring, and, as the blow of the retreating shell is applied, that spring must inevitably bend from the strain. It is likely that this bending permits the nose to come over and strike upon the body part of the shell, and may aid in the rotary motion which enables the shell to become free of the extractor hook, and in projecting the shell sidewise out of the gun. The form of the nose would certainly greatly increase the chances that it will do such things. Defendant's construction does not appear to me to be a spring ejector, in the sense of the patent in suit. It is a rigid block pivoted in one end of the frame. It is actuated by a spring, and that makes it incumbent upon us to study its mode of action. It has a nose, and the crucial question is whether that nose acts in the same way that the nose of the patent acts. As the shell is withdrawn it strikes against what may fairly be called a shoulder. Up to that time the nose cannot have delivered any blow to the side of the shell. From this instant, the extractor hook pulling to the rear, and the shoulder resisting, the shell must turn on the extractor hook as a pivot. As it does so, the short leverage on the head must act in such a way that the shell will rapidly retreat from the nose, and, by its side-wise momentum, tumble out, end over end, after freeing itself from the extractor hook. Common sense, plus personal examination of the exhibits, satisfies me that these are facts, and settles beyond cavil the proposition that the nose on defendant's structure is not "adapted to strike the body part of the cartridge shell as its head is caught against the shoulder," or at any other time, and does not assist in the lateral expulsion of the cartridge shell by adding any direct force to the projection. The Patent Office must have thrown the

functional purposes and limitations of the claim and specification around the nose of the patent in suit, in order to cipher out novelty therein, and it is not the province of the courts to go beyond the grant, or to aid in any manner in enlarging the contract which the letters patent import. As the claim must be construed, it will suffer the same fate as claim 5 of the earlier patent, because concededly there is no infringement. Complainant's actual construction appears to be as well outside of this patented feature as is the defendant's.

Claims 10, 11 and 12 of No. 434,062: Claim 10 calls for a combination of the frame containing the breech mechanism with a reciprocating breechblock moving therein on guide or raceways, and a removable side plate having a portion of it forming one of said raceways supporting the breechblock, substantially as described. The specifications tell us that the frame is formed of a solid block of metal, with a recess chambered into one side, and that the breech is solidly attached to the front end, so as to open into the upper part of that recess. The magazine also opens into it below the barrel, and the stock is attached to the rear of the frame. The side plate closes the recess, and forms the guideway on which the breechblock rests and slides. Complainant looks for a broad construction of this claim, because he insists that the gist of the invention is to remove the side plate, so as to be able to easily clean, repair, or replace the various parts of the working mechanism; and, if that plate also serves to guide the breechblock in its movements to and fro, the claim is in that respect infringed. Removable side plates for guns, which will afford ready access to the mechanism within the frame, were, however, by no means new with Hepburn. Swingle and Huntington, 150,102, shows such a plate in figure 5; Holmes, 273,684, in figure 7. See, also, Bull, No. 209,010. The inventive thought would appear to be the making such a use of the removable side plate that a portion of it shall form one of the "raceways supporting the breechblock," or a "guideway on which the breechblock rests and slides." In defendant's gun there are no guides or raceways to be found for the breechblock, which is entirely supported and handled by the action-bar, and the frame merely offers a side wall which prevents lateral dislocation. Claim 10 is not infringed, and this conclusion disposes of claims 11 and 12, which are manifestly narrower.

But claim 27 of No. 434,062 is another story. In the specifications we find a detailed description of the way in which the extractor is set in a longitudinal recess formed in the bolt, so as to hold the extractor against the strain of its elastic-hook end. Thereby the solid walls of the breech-bolt take all the strain brought upon the shank of the extractor, and holding-screws, which may loosen or wear out, are avoided. It is then shown that by making an enlargement, w, as in figure 6, fitting into a corresponding recess formed in the side wall of the long recess, the extractor will be locked in place, and cannot be pulled endwise out of its seat when extracting the shell. Its situation naturally leaves it free to be taken out by hand when the bolt is detached. The substance of

this feature of the invention clearly seems to lie in the earlier part of the description. The proceedings in the Patent Office emphasize the correctness of this conclusion. Burton, original 81,059 and reissue 3,699, were cited as anticipatory of this claim. Hepburn, in reply, said, among other things:

"This claim is for a combination of the extractor with the reciprocating breech-bolt, so set in a groove in the bolt that the walls of the groove in the solid metal shall hold the extractor and resist the strain of the elastic-hook end."

In this respect he distinguished his idea from the disclosure in Burton, and claim 27 was thereupon allowed. The defendant has copied precisely this manner of mounting the ejector in the breech-block, and gets, as Hepburn does, the benefit of the walls of the groove in the breechblock. To prevent longitudinal movement, instead of using the enlargement and corresponding recess, he drives a pin through the shank of the extractor, so that it is friction-tight, and obtains the same result. This makes the removal of the extractor more difficult, but, as I understand the law, it is well settled that a deliberate impairment of the utility of the patented construction, leaving its essential function in full operation, will not avoid infringement.

It is unnecessary to cumber this opinion with a statement of the reasons for concurring with the Patent Office in the conclusion that the Burton patent in no sense anticipates claim 27. The Burton extractor is a different device, mounted differently and operating differently.

Our labors are ended. Much that defendant suggests meets with cordial approval. This is not a case in which the complainant is entitled to claim dominion of the entire shore by reason of his additions to the general stock of knowledge. On the other hand, he has added one pebble, at least, in claim 27, and defendant ought not to step on that pebble.

Let the bill be dismissed upon the first patent, and upon all claims in the second patent except 27. Upon claim 27 of patent 434,062 let there be an injunction and accounting.